ADA DRAPER, ADMINISTRATRIX, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 February, 1913.)

1. **Railroads — Negligence — Objects Upon Track—Observation of Engineer—Evidence.**

When a railroad company is sued for damages for the negligent killing of the plaintiff's intestate, alleged to have been run

over at night by the defendant's train, while he was lying drunk and helpless upon the track, and there is evidence on the part of defendant tending to show that the train could not have been stopped under 200 yards, and that the engineer could not have seen the intestate at that distance, owing to his position on the track, with an electric headlight, with which the locomotive was equipped, evidence is competent to show that a man standing on the track where the intestate was killed could have been seen a distance of 400 or 500 yards by the engineer, as a circumstance upon the question within what distance the engineer could have seen a man down upon the track.

### 2. Same—Stopping Train—Opinion—Harmless Error.

When the question at issue is whether the engineer on defendant railroad company's train could have stopped the train, at the speed it was then running, in less than 200 yards, or in time to have avoided the killing of plaintiff's intestate from the time he could have been seen down on the track by the electric headlight of the locomotive, it is incompetent for witness of the plaintiff to testify that a passenger train could have been stopped in 75 yards, unless this testimony were based on the facts in evidence as to the speed of the train, its length and weight, and the condition of the track; but held harmless error in this case, as the witness further testified that he knew nothing of the distance it would take a train, such as the one in evidence, to stop, under the existing conditions and circumstances.

### 3. Same.

When in an action to recover of a railroad company damages for the alleged negligent running over and killing of plaintiff's intestate the question at issue was the distance within which the train could, under the circumstances, have been stopped, it was competent for plaintiff's witness to testify that this could have been done within 200 yards, especially when the defendant was endeavoring to establish that fact, as in this case.

### 4. Same—Positive Evidence—Instructions.

The testimony of defendant railroad company's engineer as to whether he could discover the plaintiff's intestate down upon the track in time for him to have stopped the train under the circumstances to avoid the injury complained of, and that of plaintiff's witness in contradiction, are of the same character of evidence, and it was not an error in the court to refuse to instruct the jury that the engineer's testimony was positive and that plaintiff's witness was not positive, the only difference between the two being that the jury may consider the better opportunity of the engineer to know.

DRAPER *v.* R. R.

### 5. Appeal and Error—Exceptions—Assignments of Error.

An assignment of error to the charge of the court to the jury to which there is no exception in the case on appeal will not be considered.

### 6. Measure of Damages—Instructions—Charge as a Whole—Harmless Error.

The judge in his charge to the jury upon the measure of damages for the negligent killing of plaintiff's intestate instructed them that they could award $500, $2,000, or any amount they concluded was right, basing their findings upon the evidence in the case as they saw it, not exceeding the amount demanded: *Held,* this charge furnished no rule for the admeasurement of damages, and standing alone was erroneous, but considered with the other parts of the charge in this case, which, taken as a whole, gave the correct rule of damages, was not reversible error.

### 7. Railroads—Negligence—Down on Track—Burden of Proof.

In an action to recover damages for the negligent killing of plaintiff's intestate by a train of the defendant railroad company, while the intestate was down and helpless on the track, the burden is on the plaintiff to establish three facts: (1) That the intestate was killed by the defendant's train; (2) that the intestate was down on the track in an apparently helpless condition; (3) that the defendant, by the exercise of ordinary care, could have discovered the intestate in time to stop the train and avoid the killing.

### 8. Same—Evidence—Stopping Train—Ordinary Care—Questions for Jury.

In an action to recover of a railroad company damages for negligently killing the plaintiff's intestate at night, it was admitted that it was the defendant's train that killed him; there was evidence that he was down and helpless on the track; and as to whether the defendant's engineer used ordinary care in stopping the train in time to avoid the killing, defendant's engineer testified the train could have been stopped within 200 yards, and that he discovered the object upon the track to be a man when 160 yards distant. It was also in evidence that a man standing could be seen by the aid of the electric headlight on the engine a distance of 400 or 500 yards: *Held,* it was a question for the jury to decide whether the engineer, in the exercise of ordinary care, could have discovered the object down on the track more than 200 yards away, and that he could have stopped the train in time to avoid the killing, after he had discovered it was a man.

DRAPER *v.* R. R.

### 9. Same—Opinion Evidence.

> In an action for damages for the negligent killing of plaintiff's intestate, who was down and helpless on the track and thus run over by the defendant railroad company's train, involving the question as to whether the engineer, by the exercise of ordinary care, should have stopped the train in time to have avoided the killing, the jury are not bound by the opinions of the witnesses as to the distance within which the train could be stopped, and may consider the evidence of the condition of the track, the grade, the length and weight of the train, the speed, and other relevant circumstances in connection with these opinions, and from the whole evidence determine within what distance it could have been stopped.

APPEAL by defendant from *Webb, J.,* at August Term, 1912, of NORTHAMPTON.

This action is to recover damages for the alleged negligent killing of the plaintiff's intestate.

It was admitted at the trial that, in the early morning of 1 July, 1911, at 3:25 o'clock, while it was very dark, the plaintiff's intestate laid down on his back upon the defendant's track between Weldon and Garysburg, and was in this position when he was stricken and killed by defendant's train.

It was also admitted that the track was straight from Weldon to the point where the intestate of plaintiff was struck, a distance of a mile and up grade, and that the train was going from Weldon to point and beyond where plaintiff's intestate was hit, and that defendant's said passenger train ran over and against the plaintiff's intestate; that said train was equipped with the best electric headlight, and that plaintiff's intestate died in a short time after the accident as a result of his injuries.

It was in evidence that the intestate was very drunk, and that he was inquiring for a place to sleep a short time before he was killed.

The train consisted of the engine, a baggage car, an express car, and four heavy Pullmans, and the body was found, after the killing, under the first truck of the second car from the engine.

It was a clear night, the track was straight, the train was moving slightly up grade at a speed of 30 or 40 miles an hour,

and there was evidence that the electric headlight would enable the engineer to see a man standing up 400 or 500 yards. The train was equipped with the best appliances, and the engineer testified that he discovered a man was on the track when 165 yards distant, and that he could stop the train in the "neighborhood of 200 yards"; that 200 yards was "as near as he could stop it."

He also testified that when he first saw the object, he knew it was a man; that his body was in the center of the track, with his legs over the right-hand rail, and that the body was not concealed, but was a little lower.

The conductor testified, among other things, that a man could be seen about 200 yards on the track.

There was evidence on the part of the defendant that the train was properly equipped; that a careful lookout was maintained; that the intestate could not have been seen a greater distance than 165 yards, that the train could not have been stopped in less than 200 yards.

There was a verdict and judgment in favor of the plaintiff, and the defendant excepted and appealed.

*W. E. Daniel, Peebles & Harris, and Gay & Midgette for plaintiff.*
*Mason, Worrell & Long and F. S. Spruill for defendant.*

ALLEN, J. There are several exceptions to evidence, none of which require extended discussion.

It was competent to prove that a man standing could be seen with an electric headlight 400 or 500 yards, for the purpose of showing the force of the headlight, as a circumstance upon the question within what distance the engineer could see a man down on the track, and it also appears that this fact was not in dispute, as a witness for the defendant testified: "How far you can see an object on the track with an electric headlight depends on how the object is. The size of a man standing up, you could see 400 or 500 yards."

The question asked the witness for the plaintiff, "How far would you say, then, that it would take to stop a passenger

train after it began to stop?" and his answer, "Seventy-five yards," ought to have been excluded, unless it is assumed that the question and answer were based on the facts in evidence as to the speed of the train, its length and weight, and the condition of the track; but the whole evidence of this witness shows that the opinion he expressed could not have influenced the verdict.

He said on cross-examination, "that he had seen trains stop with emergency air-brakes, but he could not give an instance nor had he ever measured the distance from the application of the brake to the stopping place of the train. The train upon which he saw the emergency brakes applied was a light Seaboard train, running not over 20 or 25 miles an hour, and he knew nothing at all about how long it would take the emergency air-brakes to stop a heavy Pullman train, running 30 or 40 miles an hour. He had never ridden on an Atlantic Coast Line train."

The answer of the witness for the plaintiff, that the train which killed the intestate, properly equipped, and at the speed it would attain from Weldon to the place of the killing, could be stopped within 200 yards, was competent, but if not, this was a fact the defendant was endeavoring to establish, and the engineer and the conductor testified that the train could be stopped within 200 yards.

The eleventh exception is to the failure to charge that the evidence of the engineer as to when he did or could discover the intestate was positive evidence, while the testimony of the plaintiff's witness on this question was not positive. The form of the prayer for instruction shows the difficulty confronting the defendant's counsel. He was endeavoring to contrast positive and negative testimony, and while he asserted that the evidence of the engineer was positive, he was not willing to commit himself to the statement that the evidence of the plaintiff's witness was negative.

We fail to see the distinction attempted to be drawn, and are of opinion that the evidence of an engineer that he could or could not have discovered within a certain distance, belongs to

the same class with that of another witness, who testifies to the same fact, and that the only difference between the two is that the jury may consider the better opportunity of the engineer to know.

The thirteenth assignment of error cannot be considered, because it is based on alleged error in a part of the charge, to which there is no exception in the case on appeal. *Worley v. Logging Co.,* 157 N. C., 498.

The fourteenth assignment of error is to the concluding sentence in the charge on damages: "You have a right to give this man $500, $2,000, or any amount that you may come to the conclusion that he is entitled to recover, basing your findings upon the evidence in the case as you see it, not exceeding $2,000."

Standing alone, this charge would be objectionable, because it furnishes no rule for the admeasurement of damages, but it must be considered in connection with other parts of the charge, and immediately before the sentence quoted the court charged the jury, clearly and at length, as to the correct rule of damages, to which no exception was taken.

This disposes of the exceptions relied on in the brief of the defendant, except those relating to the motion to nonsuit.

The burden was on the plaintiff to establish three facts:

1. That the intestate of the plaintiff was killed by the train of the defendant.

2. That at the time of the killing the intestate was down on the track in an apparently helpless condition.

3. That the defendant, by the exercise of ordinary care, could have discovered the intestate in time to stop the train and avoid the killing.

The first fact was admitted, and there was ample evidence to sustain a finding in favor of the plaintiff on the second. The third was in more doubt, and while we think, on the whole evidence, the jury might have found this in accordance with the contention of the defendant, we cannot say there is no evidence to support a finding in favor of the plaintiff.

According to the evidence of the defendant, the train could be stopped within 200 yards, and the engineer testified that he

discovered it was a man on the track when 165 yards distant. It was also in evidence that a man standing could be seen by the aid of the electric headlight 400 or 500 yards.

If so, was it not a reasonable inference that the engineer could have discovered that there was an obstruction on the track more than 200 yards away, and that if he had then gotten the train under control he could have stopped it in time ·to avoid the killing, after he discovered it was a man?

Again, the jury was not bound by the opinion of witnesses as to the distance within which the train could be stopped, and had the right to consider the evidence of the condition of the track, the grade, the length and weight of the train, the speed and other relevant circumstances in connection with these opinions, and from the whole evidence to determine within what distance it could be stopped. *Wright v. R. R.,* 127 N. C., 226; *Davis v. R. R.,* 136 N. C., 117.

If so, there was evidence that the train could be stopped in less than 200 yards, and in time to avoid the killing.

The motion for judgment of nonsuit was properly overruled, and on the whole case we find no reversible error.

No error.